### JOHN W. CUSHING vs. HENRY HALE.

When a person is committed to jail, and remains within the same, or within the limits, who is subject to have a guardian appointed over him, as a spendthrift, under the 14th section of the statute in relation to settlement and providing for the poor, the select men and civil authority of the town where the jail is situate, may make the complaint for that purpose, if such person has no legal settlement in the state.

*Semb.* The select men and civil authority of any town where such person resides, may make such complaint.

If such complaint recites that it was made by a majority of the select men and civil authority, and the magistrates act thereon, it is *prima facie* evidence that it was made by such majority.

This was an action for money had and received for plaintiff's use. The defendant plead in abatement to which the plaintiff replied. The defendant demurred to the replication, which the court decided to be sufficient, and ordered the defendant to answer over. The defendant then plead non assumpsit with notice. Upon trial it appeared that the money received by the defendant for which this action was brought was pension money due the plaintiff as an invalid pensioner of the United States.

The defendant offered in evidence a copy of a record of the proceedings of the select men and civil authority of Chelsea and the doings thereon, showing that the defendant was appointed guardian of the plaintiff in 1827. To this evidence and to the admission of any evidence under the notice of the defendant, the plaintiff objected upon the ground that the same identical facts which the defendant had set forth in his said notice, had been pleaded in abatement and decided against him upon that plea.— The court overruled the objection and admitted the evidence.

The defendant also offered in evidence two accounts, purporting to be the accounts of said Hale as guardian of said Cushing, approved by the select men of Chelsea, and also parol evidence tending to prove, that the select men who signed the complaint against said Cushing and who approved the accounts of said guardian, acted, at the time when they signed the same, in that capacity, and were select men of said town of Chelsea. To this evidence the plaintiff objected, on the ground that the record of their appointment

was the only proper evidence.   The court overruled this objec-
tion and admitted the evidence.

The plaintiff also objected to the receipt of the copy of the
proceedings whereby the defendant was appointed guardian of said
Cushing, upon the ground that the defendant must prove other-
wise than from the recital in said copy, that said appointment of
said Hale guardian, was made at the instance of a majority of the
select men and civil authority of the town of Chelsea.   This ob-
jection the court also overruled.

The plaintiff then offered in evidence, a copy of an execution
in favor of Dano and Stearns against said Cushing and the offi-
cer's return thereon, and also the depositions of D. Azro A.
Buck, L. Bacon, Annaniah Bohomon and Benjamin Grout,
which tended to prove that Cushing, at the time of being put un-
der guardianship, had no residence in Chelsea otherwise than as a
prisoner in the jail limits—that for two years previous to his com-
mitment to prison, and at the time of his commitment he was a re-
sident of Norwich, in the county of Windsor.

It was admitted that Cushing had no legal settlement in the
state of Vermont.

From all which evidence the plaintiff insisted that the town of
Chelsea had no jurisdiction over said Cushing and that the pro-
ceedings of the select men and civil authority of Chelsea, and the
appointment of said Hale guardian of said Cushing, were wholly
void; thus the money received by said Hale as guardian, being a
pension given by the government of the United States to the
plaintiff, is not by the law of the United States subject to the
control of such guardian or any person but the pensioner himself.

The court decided against the plaintiff upon the point above
raised, and rendered judgment for the defendant to recover his
cost ; to which several decisions and judgment of said court the
plaintiff excepted.   Exceptions allowed and certified.

*Sawyer and Weston for plaintiff.*—The select and civil author-
ity of Chelsea had no right, under the statute, to procure the
plaintiff to be put under guardianship, and if the authority under
which the defendant seized Cushing's pension money was void,
then he is unquestionably responsible for it in this action.

It is too clear to admit of illustration, that if Cushing did *not*
"*belong*" to Chelsea, then its select men and civil authority could
make no complaint on which the two justices could legally issue a
citation, or appoint guardians over him, and the whole proceedings

CHITTENDEN,
January,
1836.

Cushing
vs.
Hale.

CHITTENDEN,
January,
1836.

Cushing
vs.
Hale.

were absolutely void. In determining the true construction of the statute, let it be remembered, that it is most harsh if not oppressive in its character; that it vests a summary and fearful power over the whole fortunes, comforts and reputation of a citizen, not in our high courts, but in a set of inferior magistrates, and that it ought to receive a strict construction.

1. We contend that the term "belongs," in the statute, means *legally settled.* It is used in exactly that sense, in section 5 of the poor act, p. 371.

2. The case states that Cushing had no other residence in Chelsea, than as a prisoner in jail; and in *Danville* vs. *Putney*, 6 Vt. Rep. 512, the court expressly decided, that prisoners, so situated, are *transient* persons within the meaning of the 11th section of the poor act. If Cushing was a *transient* person in Chelsea, did he "belong" there, in the sense of the statute or in any sense? It can make no difference that he had no legal settlement in the state, because, his support and maintenance devolved on the state and not upon Chelsea—(see no. 5, Sup. Act, Rev. Stat. p. 384)—and because, were it otherwise, the town only to which he "belonged," could interfere to place him under guardianship.

3. The whole tenor and spirit of the statute show, it appears to us, that the right of a town to place the spendthrift under guardianship, flows from the fact of his being legally settled there. It is intended simply as an indemnity against their ultimate liability to support him in sickness and poverty. There is not an expression intimating that moral restraint, the benefit of himself and family, &c. were any part of its object, except so far as those consequences resulted *incidentally.* It is town action, town custody, town security, from beginning to end. Nor will it do to say that, although the state was ultimately liable to support plaintiff, yet Chelsea *might* be subjected to some loss or trouble beyond the proportionate amount provided by the treasury. *De minimis non curat lex.* It would be a new idea, that every *transient* person might be seized, because he abode in a town for a week, and his property sequestrated, on the ground of a mere possibility of a trifling loss; much more so when his stay was owing to legal coercion. Cushing "belonged" to Chelsea, not as coming to reside there—not as subject to military duty or taxation there—not as a voter there—not as a corporator for whose support and maintenance Chelsea was responsible. He "belonged" there in no sense literal or technical, that gave Chelsea a right to sequestrate his property.

CHITTENDEN,
January,
1836.

Cushing
vs.
Hale.

4. The provision that the two justices might appoint a guardian, "if upon examination it shall appear that the person complained of, comes within the true description, intent and meaning of this act," (sec. 14) makes their acts conclusive only as to the improvidence and debauchery &c. of the person complained of. Obviously their adjudication cannot bind an individual not subject to the operation of the act.—3 Cranch 331, Wire and Withers—13 Johnson, *Suydam and Wyckoft* vs. *Keyes*. But the act is void for the reason given above.

. 5. It is said that inasmuch as the ward could *complain*, he is bound by the guardianship while it subsists. The answer is: 1. That the statute gives no appeal from the determination of the justices. 2. That he may complain of the *doings of the guardian*, (Prov. Sec. 15—p. 375, Rev. Stat.) or 3d: He may sue humbly for a certificate of reformation from the guardian interested to withhold it—or, 4th: He may apply to the county court for a restoration of the fragments of his property left. Now all these modes of relief presuppose the *right* to put him under guardianship, and could not be applied till the injury was inflicted; and hence a direct action against the defendant acting under a void authority, is Cushing's only remedy.

We contend that the pension of the plaintiff was exempted from the operation of the act under which the defendant was appointed guardian; and there was no other property of Cushing taken. By the act of Congress, passed April 10, 1806, no sale, transfer or mortgage, of the whole or any part of any pension to non-commissioned officers, &c. before the same becomes due, shall be valid, and whoever claiming the same under power of attorney, must make oath that such power of attorney, is not given by reason of any transfer of the same. By the act of April 28, 1808, the operation of that act is extended to commissioned officers, disabled *since* the revolutionary war.—See Ing. Dig. p. 522 & 523.

*Mr. Upham for defendant.*—The defendant resists the plaintiff's claim upon the ground that he was on the 26th of May, A. D. 1827, by two justices of the peace, within and for the county of Orange, appointed guardian to the said Cushing, according to the provisions of the 14th section of an act, entitled "An act defining what shall be deemed and adjudged a legal settlement, and for the support of the poor; for designating the duties and powers of overseers of the poor, and for the punishment of idle and disorderly persons," and that, what money he received, belonging

CHITTENDEN
January,
1836.

Cushing
vs.
Hale.

to the plaintiff, he received as such guardian, and has paid it out for the support of the said Cushing and his family and for the payment of his just debts, and has settled his account as guardian to the said Cushing, with the select men of Chelsea.—Vide stat. 374 sec. 14, and 385 sec. 4.

The counsel for the plaintiff insists, that the defendant's appointment as guardian to Cushing, was void, because Cushing had no legal settlement in the town of Chelsea, but resided there as a poor debtor on the jail liberties. Cushing had no legal settlement in the state, as appears from the bill of exceptions. He resided in Chesea and so did his children ; and if he or his children, while residing there, became a public charge, Chelsea must bear it.

The justices, therefore, had jurisdiction of the case, their proceedings are regular on the face of them and were properly admitted in evidence in the court below.

Again, if Cushing was aggrieved at the doings of his guardian, he had a right to complain to the county court for relief in the premises.—Vide stat. 375 prov. to 15th sect.

If he thought himself entitled to a restoration of his property, or that his pension was not under the control of his guardian, he should have applied to the court under the proviso to the 16th section of the statute for relief.—Vide stat. 376.

This pension money was liable to the control of his guardian and was so decided to be by the supreme court in Orange county, in the case of *Kendrick* vs. *Dana.*

We further insist that the proceedings of the justices appointing the defendant guardian to the plaintiff, being regular on the face of them, should afford protection to the defendant until set aside by a court of competent jurisdiction. If the proceedings had been set aside upon the ground that the justices had no jurisdiction of the case, a court of chancery would enjoin this action, inasmuch as the defendant has paid out all the money he has received for the support of the said Cushing and his family and for the payment of his just debts. This action being in the nature of a bill in equity, ought not to be sustained against the defendant.

It is further insisted by the plaintiff, that having pleaded this matter in abatement, we were not at liberty to set it up as a defence under the general issue. This position cannot, we think, be sustained. The general rule is this : the court will not permit a defendant to plead at the same time in abatement and in bar, to the *same* matter.—1 Chit. Plea. 492.

If matter is improperly pleaded in abatement and overruled it
may afterwards be pleaded in bar or set up as a defence under the general issue.   It is true, that at the first term of the court after
this action was commenced, the defendant pleaded in abatement that he was the legal guardian of Cushing, and as such guardian received the money, &c.   Cushing replied to the plea and the defendant demurred specially to the replication.   The court adjudged the replication to be sufficient, and the defendant filed his exceptions which were allowed and the propriety of the decision is before this court for revision.

All that the defendant asks in this case is a decision in his favor, and it is of no consequence to him upon what ground it is made. We think, however, that the judgment of the county court, upon the trial of the merits of the cause, should be affirmed.

The opinion of the court was delivered by

WILLIAMS, CH. J.—This is an action for money had and received.   The plaintiff is a pensioner.   The defendant has received his pension money, amounting to over $1000, and claims to have received it as guardian duly and legally appointed, according to the 14th section of the statute in relation to the settlement of the poor, and to have regularly accounted therefor.   The question involved and to be decided is, was the defendant legally appointed guardian?   If he was, it is immaterial to enquire whether he has properly accounted therefor.   It is not found that the defendant has ever been discharged from his guardianship.   The remedy for the plaintiff, if he has sustained any injury, provided the defendant is his guardian, must be under the 15th section of the statute before mentioned.

It appears that two justices of the peace, on the complaint of the select men and civil authority of the town of Chelsea, on the 26th of May, 1827, appointed or attempted to appoint, the defendant as guardian to the plaintiff.   We have not the preceedings here; but it seems an objection was raised at the county court, because no evidence was offered that the complaint was made by a majority of the select men and civil authority of Chelsea, other than the recital contained in the complaint.   It is, however, very certain, that if a complaint was made, purporting to be made by a majority of the select men and civil authority of the town, and the magistrates acted on that complaint, it must be deemed *prima facie* to be the complaint of a majority.   The mere count-

ing the number who constituted the authority may as well be done by one party as another; and when the magistrates assume to act on a complaint, purporting to be made by a majority of the authority, whoever contends that there was not a majority to authorize their action, must make that fact appear. It is also expressly stated in this case, that the plaintiff had no legal settlement in this state. The important question then presents itself, whether the magistrates had any jurisdiction, and this depends on the construction to be given to the 14th section of the statute before mentioned. To authorize this proceeding, the magistrates must have jurisdiction over the person. It is a proceeding which principally affects the person complained of, and unless he is subject to that jurisdiction; or in other words, unless he is such a person as is contemplated in the statute, and liable on that account to be placed under guardianship, it is clear that any attempt thus to control him must be ineffectual. The words of the statute are, "That if any person, by " excessive drinking, gaming, idleness or debauchery of any kind, " shall so spend, waste or lessen his or her estate, as thereby to " expose him or herself, or his or her family, or any of them to want " or suffering circumstances ; or shall by thus spending, wasting or " lessening his or her estate, endanger or expose the town to which " he or she belongs, in the judgment of the select men and civil au- " thority of such town or a major part thereof, to a charge and ex- " pense for the support and maintenance of him or her, or his or " her family, or any of them ; such select men and civil authority, " or the major part of them, shall lodge a complaint with two justi- " ces of the peace, who may appoint a guardian or guardians to " such person, who are to take him and family under their care, " and take and dispose of his property, and manage the same in " such a manner as will most conduce to the interest and advantage " of such person, or his or her heirs." The object of this statute is two fold. First, for the benefit of the person and his family, and thereby, secondly, for the benefit of the town. If by excessive drinking, gaming, idleness or debauchery, any person is wasting his estate, he is considered as unfit to have the management or the control of himself and family, exposes himself and them to suffering, want and poverty, and the town to the charge and expense of their maintenance. So far as the first object was to be obtained, the proceeding is a regulation of police, to place the person who wantonly neglects himself and family, under the control of those who will do what he himself ought to do. To obtain this

CHITTENDEN,
January,
1836.

Cushing
vs.
Hale.

object, the duty of making the complaint might as well have been required of any other tribunal, as of the select men and civil authority. It might have been made the duty of any informing officer to make the complaint. But as the town who would be under obligation to provide for him and family, in the event of his being unable to take care of himself, would necessarily have an interest to prevent the spendthrift from wasting his estate, it is made the duty of the select men and civil authority of the town who may be endangered or exposed, to make complaint and take the necessary steps to enforce the regulation of the statutes.

There is nothing in the subject matter of the statute to require that this should be done by the overseers of the poor of the town where the person is legally settled. The town receives no direct benefit from the proceeding. They are only ultimately benefited by his being compelled, together with his family, to earn their subsistence, and by having his estate prudently and discreetly managed, instead of being squandered in riotous living.

The statute, however, makes use of the term, *the town to which he belongs*; and if this expression is to be considered as equivalent to, and synonymous with the expression *"legally settled,"* then the objection is well taken to the proceedings had in this case.

But we find the term may as well imply an inhabitant of, or a resident in a town, as a person legally settled. The definition, then, must be gathered from the subject matter of the statute, as well as from the use made of the same expressions in other parts of the same statute.

To say that this power of appointing a guardian, can only be exercised on the complaint of the select men and civil authority of the town where a person is legally settled, would exclude from the operation of the statute, a number of persons who have no legal settlement in the state, and who certainly ought to be subject to its control, as much, or more than those who are legally settled in the state.

The person who dwells among us, who is ruining himself and family, and exposing them to wretchedness and misery, by the constant and habitual practice of those vices which are mentioned, and who must in a very short time be, with his family, relieved and supported by the town where he resides; who can look to no other town for remuneration, is, certainly, as proper a subject to be placed under guardianship, as though he had a legal settlement. The interest of community and of the town where he dwells, as imperiously demands it. The subject matter of this section would

CHITTENDEN,
January,
1836

Cushing
vs.
Hale.

lead us rather to say that the expression, *the town where he belongs*, should be considered as *the town where he resides*, which, in the event of his poverty, would have to contribute to his relief. On reference to the 20th section of the statute, we find that the same term is made use of in this sense.

If any poor person, *belonging to any town*, shall apply for relief, &c. the overseers may make application to a justice of the peace, who, with the overseers, are to determine both as to the fact of his being in indigent circumstances, as well as the extent of the relief to be administered.

It was considered, in the case of *Washburn vs. Vernon*, Windham county, 1832, that this 20th section applies as well to those persons who had no settlement in the state, but who were poor, for whom the town was obliged to provide, as to those who had a legal settlement in the town ; and that the term *"belonging,"* in this section, does not intend that the person has a legal settlement. It appears, in the case now before us, that the plaintiff has no settlement in this state. With respect to such persons, we have no hesitation in saying, that they are proper subjects for the exercise of the power contemplated in the 14th section of the statute, and that it may and must be exercised on the complaint of the select men and civil authority of the town where such person resides. If such spendthrift has a legal settlement in the state, in a town different from the one where he resides, we are not called on to decide who must be the complainant. The construction which has been put on the 11th section of the statute in relation to persons confined in gaol, is in no way at variance with this construction, but rather confirmatory of it. It was a long time a matter of doubt, whether this 11th section extended to persons in gaol. The apparent inconsistency of considering a person as a transient person, who was actually confined within the walls of a prison, led many to doubt, whether persons confined in gaol should not apply for relief to the overseers of the poor of the town where they resided, and from which they were taken when carried to prison, rather than to those of the town where the gaol was situated. But it is now settled that the application must be made to the overseer of the poor of the town where the gaol is situated.

The town of Chelsea, therefore, was the town which was endangered or exposed to expense, if the plaintiff while in prison, and having no settlement in the state, became a subject of relief under the statute, rather than the town from which he was taken and which could not be *endangered* or *exposed*, in consequence of his

becoming a town charge while he remained in prison.  If, therefore, the complaint may be made by the authority of the town, where such person resides, and must be made by the authority of the town who are exposed and endangered, it will follow that the civil authority, of the town where the gaol is situated, must make the complaint against all that class of persons, confined on and remaining within the limits of the gaol in such town, who have no settlement in the state.  We are, therefore, fully satisfied that the magistrate had jurisdiction in this case, and that the defendant was legal guardian and must account for the property received, in some other way than in an action of assumpsit, at the suit of the person placed under his guardianship.

This view of the case must, of course, dispose of the other branch of the argument in behalf of the plaintiff.  For if the defendant has expended this pension money in payment of debts rather than in support of the pensioner and his family, and if that is a subject of which the plaintiff may complain, he must apply to the county court.  But we cannot yield to the argument which has been advanced, that this pension was designed, exclusively, to be expended by the pensioner himself.  It was designed, most undoubtedly, for the comfort and support of himself and family ; and when he is incompetent to expend it for this purpose, whether from a defect of understanding, or from profligacy, it could never be supposed that the local authorities of the state might not place him under guardianship and do that for him which he could not do himself.  The very fact that the guardian, in this and similar cases, can possess himself of the money from the agent of the government, shows most conclusively, that although a transfer of a pension, by the pensioner himself, is not recognized ; yet a transfer, by authority of law, to the person appointed to take care of him and his family, and expend his property with discretion, is recognized.  If we were to assist the plaintiff to recover this money, yet we must first repeal our statute before we could say, that the guardian should not control and expend it in such a manner as the plaintiff ought to do.  The want of any proviso in the act of congress, that the pension money shall not be paid to the guardian, when one is appointed ; the fact that the money is so paid, make it sufficiently evident, that the government never contemplated that the pensioner should have the entire control of the money due to him, and expend it in a manner not conducing to his comfort and support or that of his family, and subject them to the various provisions made for the support of paupers.  It surely could not

relieve this pensioner, to have this money and expend it, and leave himself and family liable, under the 17th section of the same statute, to be bound out to labor, or employed in the work house.

We have not examined the account of the guardian, because, from the view already expressed, we think it is not to be done in this suit.

The result is, that judgment must be affirmed.